No. 12,025.

F. C. GLADNEY VS. B. M. MANNING, SHERIFF, ET AL.; ARDIS & CO. VS. T. R. ARMISTEAD ET AL.

Without resorting to the revocatory action the judgment creditor may contest the judgment of another against the common debtor, when the contested judgment is assailed as a simulation, based on no consideration. C. C., Art. 1970; 2 An. 484; 11 An. 267; 2 Hennen's Digest, p. 1031, No. 1.

Hence the prescription of one year applicable to the revocatory action furnishes no protection to the contested judgment. Civil Code, Art. 1994.

The judgment for an alleged loan, and the judicial mortgage, arising from registry of the judgment, will not avail against other judgment creditors, when there was no such loan at the date the judgment for the loan and of the judi-

cial mortgage, although the loan had been promised, and part furnished sub-sequent to such judgment; the article of the Code (3292) authorizing conventional mortgages to secure future engagements having no application to such a case.

APPEAL from the Second Judicial District Court for the Parish of Bienville.  *Watkins, J.*

*D. W. Stewart* and *J. E. Reynolds* for Plaintiffs.

*L. K. Watkins* and *W. U. Richardson* for Ardis & Co., Defendants, Appellees.

*J. F. Pierson* for T. R. Armistead, Defendant, Appellant.

Argued and submitted January 24, 1896.
Opinion handed down February 10, 1896.

The opinion of the court was delivered by

MILLER, J. The plaintiffs, judgment creditors of the commercial firm of Theus & Armistead, seek to enjoin the execution of the judgment against the firm, recovered by T. R. Armistead.   The petition avers there was no basis for the judgment; that it was confessed by one of the firm; intended to cover the property of the debtors from the pursuit of their creditors, and the prayer is for the injunction, and that the judgment be decreed void.   The answer avers that T. R. Armistead agreed to loan the firm eight thousand dollars, five thousand of which was furnished; that the loan was consummated to the extent of the five thousand dollars about the —— February, 1894, from which date the money was at the service of the firm, though not actually furnished until a later date; that it was agreed the firm would secure the lender by confessing judgment, and the judicial mortgage arising from the registry; that the judgment was confessed and the judicial mortgage created, and there is the admission the confession and registry was before any portion of the five thousand dollars was received by the firm: the answer further denies there was any fraud in the transaction, insists the loan agreed upon, and and the extent to which the amount was obtained, constituted a

legal basis for the judgment; there is a reconventional demand, subsequently withdrawn, for damages, the right to hereafter claim damages being reserved, the prescription of one year is pleaded, and the answer concludes with the prayer that the injunction be dissolved. Defendant appeals from the judgment in favor of plaintiffs.

It is shown by the testimony that the firm of Theus & Armistead, in need of money for their business, applied to T. R. Armistead, a man of means, for a loan, *i. e.*, eight thousand dollars; he agreed to loan five thousand dollars, and the additional three thousand dollars, if, at a later period, the affairs of the firm appeared satisfactory. The firm did not care to have the five thousand dollars at the time of the application, the end of February or beginning of March, 1893, but the testimony of T. R. Armistead is that the money, that is, the five thousand dollars, was subject to the call of the firm from the time he received from the clerk of the court the copy of the judgment agreed to be confessed in his favor, and on the faith of which the loan was to be made. The proof shows the confession was on the 20th of March, 1893, the judgment recorded and copy transmitted to T. R. Armistead, but it was not until April, 1893, that he gave the drafts on his merchants in New Orleans for the five thousand dollars; it is proved that the application for the loan was made by Theus for his firm, and the drafts were given to the other partner, W. W. Armistead, acting for his firm. The answer itself is a frank disclosure of the application for the loan, the basis on which it was to be made, the amount actually furnished and other particulars of the transaction as developed by the testimony.

The discussion between the parties has taken a wider range than required for the decision of the controversy. The judgment creditor, the plaintiff here, prior to the transaction between T. R. Armistead and the firm, had obtained judgment setting aside as simulated transfers by members of the firm to their wives, and part of the property thus attempted to be transferred is that sought to be subjected to the execution issued on the judgment of T. R. Armistead, hence it is urged that the judgment creditors succeeding in that litigation had the right, to the exclusion of T. R. Armistead and all other creditors, of satisfying their debts out of the property the subject of the simulated transfers. We might take a different view of the effect of a judgment dealing with simulated conveyances. Adams & Co. vs. Temple S. Coons *et al.*, 37 An. 305. It is claimed, too,

that Theus & Armistead derived no benefit from the loan, but that the money was returned and used by W. W. Armistead, to whom the drafts were given.    But if the money was advanced on the faith, that it was for the firm on whose behalf the application was made, the  defendant should not be prejudiced  by any misuse of the fund. But in our opinion all the  grounds assailing defendants' judgment are subordinated to another urged on us, that there was no debt to sustain that judgment.

On behalf of  the defendant it is contended there is property of Theus & Armistead, and of Theus, that plaintiff should resort to that property and not interfere with defendants' judgment and execution he seeks to satisfy only from the property of Armistead.    But we do not find the basis to control the method by which plaintiffs are to obtain  payment of their judgment against the partnership and its members.    The plaintiffs can not, in our view, be excluded from contesting the judgment against their debtors, alleged to be void, merely because it may be that without such contest they will be paid.    There is no certainty of that payment, and there is the other serious difficulty as to defendants' alleged judgment. The defendant further pleads the prescription of one year of the revocatory action.    It is settled in our jurisprudence, that prescription applies to contracts, or other acts of the debtor, serious in their character, based on some actual consideration, and designed to give the creditor an advantage or preference over other creditors.    Civil Code, Art. 1970 *et seq.;*  Revised Statutes Sec. 1304; Dennistoun vs. Nutt, 2 An. 484; Dunn vs. Woodward, 11 An. 267; 2 Hennen's Digest, p. 1031, No. 1.    If defendants' judgment had been based on actual cash  paid at the time no protection from prescription would have been requisite, and if for an antecedent debt, prescription would have been the appropriate defence to plaintiffs' action.    But the defendants' judgment is assailed, because it was based on no debt at all, and is a simulation. If of that character, the creditor interested in disputing the  judgment may contest it without bringing the revocatory action.    *Ibid.*, 2 An. 483.

The answer of the defendant frankly places before us the fact that when the judgment in his favor was confessed and recorded, no part of the five thousand dollars, for which he claims the judgment should stand, was furnished the defendants. The amount was agreed to be furnished prior to the confession, and we appreciate the testi-

mony that if called for by defendants, the defendant, J. R. Armistead, would have responded to the call. But it remains that on the 20th of March, 1893, when the judgment was confessed, no such call had been made. The argument is that as the agreement to lend was at the close of February or early part of March, 1893, the debt to defendant must be deemed to have been created at the date of the agreement to lend. With all due weight to defendant's testimony that he deemed the five thousand dollars to be that of Theus & Armistead from the time he promised to lend the amount, it seems to us that no debt arose out of the transaction until April, 1893, when defendant gave his drafts to the member of the firm who then called for the amount. It follows, we think, there was no debt until the defendant's drafts were given. Delivery to the lender is of the essence of the loan. In this case the money was that of T. R. Armistead until he parted with it. If he had failed to deliver, the firm would have had only an action for damages. If lost before delivery, the loss would not have been that of the firm, but that of T. R. Armistead. In every point of view, we must hold that when this judgment was confessed there was no debt to support it. Civil Code, Arts. 2891, 2910, 2913.

Our Code expressly authorizes a conventional mortgage to secure an obligation not yet risen into existence, and such mortgage takes effect from the date of the promise, the fulfilment of which the mortgage secures. Civil Code, Arts. 3293, 3294; Pickersgill vs. Brown, 7 An. 298. This provision, in respect to conventional mortgages, we have no power of extending to judgments. It is not admissible under our law for the debtor to spread on the records judicial mortgages based on judgment for anticipated debts. Under our system the judgment for money ascertains and is based on an existing indebtedness, and such judgments can not be used as substitutes for mortgages for future debts, enforced because of the permission not to be extended contained in our Code.

It is ordered, adjudged and decreed that the judgment of the lower court be affirmed, with costs.